HENRY E. ROBINSON *v.* JOHN RUSSELL, SAMUEL DRURY, AND B. N. BUGBEY.

24   467
80   246

24   467
91   381

MORTGAGEE—HIS POSSESSION.—The entry of the mortgagee of real estate into the possession of the mortgaged premises by consent of the mortgagor, does not invest him with any other or greater rights than he would have had without such entry.

ACTION OF MORTGAGEE FOR DAMAGES.—An action can be maintained by the mortgagee of real estate to recover damages for wrongful and fraudulent injuries done to the mortgaged property, by which the security of the mortgage has been impaired.

INJUNCTION TO RESTRAIN WASTE BY MORTGAGEE.—An injunction will be granted at the suit of the mortgagee of real property to restrain the commission of waste upon the mortgaged premises; but before it is granted, it must be made to appear that the commission of the threatened waste will materially impair the value of the mortgaged property, so as to render it inadequate security for the mortgaged debt, and that the defendants are insolvent, or unable to respond in damages for the threatened injury.

APPEAL from the District Court, Sixth Judicial District, Sacramento County.

A. P. Smith was the owner of a tract of land containing about fifty acres, near the City of Sacramento. A large portion of the land was planted to fruit trees, and devoted to raising fruit for sale. A portion of it was also used as a nursery for rearing fruit trees, which were dug up at the proper season of the year and sold. In 1859, Smith borrowed of Robinson, the plaintiff, ten thousand dollars, for which he gave the latter his note, payable in two years, and to secure the note executed a mortgage on the land.

On the 15th and 28th days of August, 1862, John Russell and Samuel Drury, two of the defendants, commenced actions against Smith on money demands due from him; procured attachments, which were placed in the hands of defendant Bugbey, as Sheriff, who, by virtue of the attachments, levied on the pendant fruit and nursery trees, and placed a keeper in possession or charge of the same. Smith was living on the land and in possession at the time.

On the 28th of August, and after the attachments had been levied, Smith entered into a written contract with the attachment creditors, authorizing the defendant, Bugbey, to sell, at

private sale, the fruit attached by him, and hold the proceeds subject to the order of the Court.

On the 10th of September, Robinson, whose mortgage had not been paid, commenced an action for the foreclosure of the same. On the 12th of September, A. P. Smith took Robinson's attorney on to the land, and told him he delivered up to Robinson possession of the same. The Sheriff's keeper refused to recognize Robinson's right to the possession. The Sheriff continued to sell the fruit, and after the proper season arrived commenced digging up the nursery trees, planted in rows, for market, upon which he had levied.

On the 17th day of January, 1863, Robinson, who had not yet obtained judgment in his foreclosure suit, commenced this action.

The other facts are stated in the opinion of the Court.

*J. G. Hyer,* for Appellant.

As by our law an officer is not authorized by attachment process to seize upon and take into his possession *real property,* the first question to settle is, what species of property is *fruit* growing on the trees, and trees growing in plantations?

For if they are personal property, then the defendants are justifiable; if, on the other hand, they are real property, (and they are either the one or the other,) the defendants are not excused by virtue of any authority claimed under the attachment process.

That the fruit unplucked was a part of the realty, and that it, as such, became, by transfer of possession by Smith to Robinson, property of the latter, I quote:

" That *fruit* is a parcel of the land, that it descends to the heir and not to the executor, (which is the ultimate rule to determine to what class any particular species of property belongs,) and that it cannot be taken in execution, is fully shown in the case of *The Bank of Lansingburgh* v. *Creary,* 1 Bar. 544; *Green* v. *Armstrong,* 1 Denio, 550; 2 East., in notes, and the authorities there cited."

Pendant fruit is part of the realty. (Bouvier's Inst. 2, 157–159 ; 4 Kent's C. 73 ; 10 Cal. 258 ; Coke on Littleton, 56.)

Trees growing in a plantation or nursery also belong to the realty ; are a parcel of the land, with the exception when, as between the tenant and the landlord, the law considers them as *emblements*. And when the law attaches to them the character of *emblements*, it has done so as in the case of fixtures—liberalized its rules for the benefit of trade, and impresses this character upon these subjects only in controversies between the landlord and the tenant ; but with regard to all others, they, both the nursery or plantation trees and the fixtures, are real property.

These views are fully sustained by the English Court of Common Pleas, in the case of *Lee* v. *Risden*, 7 Taunton, 191, where the Chief Justice, in discussing the more general question of fixtures, says : " That the trees in a nursery ground are part of the freehold until severed." And in the case of *Miller* v. *Baker*, 1 Metcalf, 33, the Court, after quoting the above recited portion of the opinion of the Judge of the Common Pleas, say : " That there is no doubt that this is true as between the heir and executor, and would be, also, when the entire property in the land, and in the trees growing therein, united in the same person." And in the case at bar, the union did and does exist. Smith was the owner of the land and the trees in the nursery or plantation, and Robinson was equally in possession, by the same title as Smith, of the land and the nursery.

This being an action on the equity side of the Court, if they find that the fruit was real estate, the money derived from its wrongful severance and sale will also be regarded as such.

*H. H. Hartley*, for Respondent Russell.

The bill is totally devoid of equity, and should absolutely be dismissed, inasmuch as it contains none of the elements which a bill of that character should possess—it does not aver irreparable injury to the fee, permanent destruction of the inheritance, or the insolvency of the defendants.

Nursery trees, planted out by Smith in rows for the purpose of being removed and taken up by him and sold at any time, particularly where they were planted on the premises after the date of the mortgage, were clearly and beyond doubt personal chattels, and did not form a portion of the realty. (*Penton* v. *Robart*, 2 East. 88 ; Taylor, Land. & Ten. 81 ; 1 Washburn, 102.)

Growing trees or grass may be severed in law from the land, and become personal property without an actual severance, as where the owner of the fee, by instrument in writing, sells or deeds them to a third person; in those cases the chattels become distinct from the soil, for, in contemplation of law, they are abstracted from the earth.

Mr. Washburn, in his recent treatise on Real Property, page 592, Vol. II, goes further than the previous cases, and lays down the rule that a man may grant trees growing on his land without deed ; also corn in the ground ; fruit upon the trees standing on his land, though they had not been severed ; and that they may be conveyed by parol, an instrument in writing not being necessary, the law regarding them so much of the character of chattels as not to requre the formality of a deed to pass them. (2 Barb. 624 ; 1 Barb. 547.)

*P. L. Edwards*, for Respondent Drury.

"An injunction will not be granted to prevent a mere trespass, unless the complainant has been in the previous undisturbed enjoyment of the property under claim of right, or where, from the want of responsibility in the defendant, or otherwise, the complainant could not obtain a relief at law." (5 Bacon's Abr. 198 ; *Hart* v. *Mayor, etc.*, 3 Paige, 213.)

Both the fruit and nursery trees, vines, etc., were simple personalty.

In regard to the fruits : We regard them as neither fixtures nor emblements, but as mere chattels. The terms of the deed impress neither of the former characters, and the true character must result from the facts. (2 Hilliard on Mort. 310.)

As between landlord and tenant the rule is well established

that nurseries are personalty. (Amos & Ferrard on Fixtures, 65; *Miller* v. *Baker*, 1 Met. 25; 1 Washburn on Real Property, page 3, Secs. 5, 6, 7 and 8.) " Where land is let for nurturing trees and plants until they are fit to be transplanted, without any specific limitation of time, the interest of the owner of the trees in them continues until that purpose is accomplished." (*King* v. *Wilcomb*, Barb. Sup. Ct. 263.)

In any view of the case we had a right to attach and sell the residuary interest of the mortgagor both in the personalty and realty. The mortgagee has no right of interference with the fruits, nursery, or realty, until foreclosure and sale; in fact, as before stated, until the lapse of six months from the time when he himself shall have become the purchaser, although from the time of such sale and purchase he would be entitled to the rents and profits. Thus the creditors had a right to take all the residuary right, title, and interest of the mortgagor, whether in the realty or personalty, and they did attach prior even to the pretended entry. (1 Washburn on Real Property, 545, Sec. 6.)

Probably the most satisfactory definition of a fixture is that given by the Supreme Court of Ohio:

" The true criterion of a fixture is the application of these united requisites:

" 1. Actual annexation to the realty, or something appurtenant thereto.

" 2. Application to the use or purpose to which that part of the realty with which it is annexed is appropriated.

" 3. The intention of the party making the annexation to make a permanent accession to the freehold." (*Laff* v. *Hewett*, 1 Ohio State Reports, 511.)

Basing the argument on this definition, we further state, that to constitute a fixture there must be a complete annexation to the soil, otherwise the thing remains a mere chattel. (Amos & Ferrard on Fixtures, 3, 6; 2 Smith's Leading Cases, 204; 2 Hilliard on Mortgages, 311, Sec. 17; Ib. 373, Sec. 59; *Gale* v. *Ward*, 14 Mass. 357.)

Gardeners, nurserymen, etc., entitled to sell, may remove.

(Amos & Ferrard on Fixtures, 65–6 ; *Miller* v. *Baker*, 1 Met. 27.)

By the Court, RHODES, J.

The object of this action was to procure an injunction, restraining the defendants from removing from "Smith's Gardens" certain growing trees and vines, and a steam engine and pump erected to irrigate the land, and restraining the defendant Bugbey from paying over to the other defendants certain money in his hands, which it was agreed represented certain fruit sold by him from the gardens. The Court below found all the material issues of fact for the defendants, and rendered judgment in their favor.

The Court found, among other things, that the defendants had not removed and did not intend removing from the premises anything besides the growing fruit and the nursery trees and vines which had been attached by the Sheriff at the suit of the other defendants. There was some conflict in the evidence in relation to the matters included in that finding, but we think there was sufficient evidence to authorize the Court to arrive at the conclusion stated.

The first and most obvious point presented in the case, and one that is decisive of this appeal, is that the whole case, as made by the allegations and proofs, does not present such a cause as entitles the plaintiff to relief in equity, or to the process of injunction to restrain the defendants from the commission of the injuries complained of. The plaintiff claims that he is a "mortgagee in possession" of the premises, and insists that by reason of that relation he possesses some further right or interest in the land than he had as a simple mortgagee, but he does not allege or prove that the mortgagor had conveyed to him any interest in the premises other than the lien which he acquired by the mortgage. He alleges and proves merely that the mortgagor let him into possession. It was recently held by this Court that the entry of the mortgagee into the possession of the premises could not invest him with any other or greater right than he would have had without

such entry. (*Cunningham* v. *Hawkins*, 24 Cal. 403.) The term "mortgagee in possession" is unknown to the law regulating the rights of parties to a mortgage in this State. It signifies no more than would the term "creditor in possession." The plaintiff is to be treated simply as a mortgagee of the premises, and will be restricted to the rights and remedies pertaining to that relation.

There can be no doubt but that an action can be maintained by the mortgagee for injuries of the character set forth in the complaint in this case, when it appears that by the acts complained of the mortgage security is impaired. This is clearly shown in *Yates* v. *Joyce*, 11 J. 136, *Lane* v. *Hitchcock*, 14 J. 213, and *Gardner* v. *Heartt*, 3 Denio, 232, cited by the appellant's counsel, and more fully in *Van Pelt* v. *McGraw*, 4 Comst. 110. But all those were actions on the case for the wrongful and fraudulent injury committed upon the premises, whereby the mortgagee's security was impaired. There can be as little doubt that the mortgagee may, by injunction, stay the commission of waste upon the mortgaged premises, when he makes a proper case in equity and shows that the commission of the threatened acts will materially impair the value of the property subject to the lien so as to render it an inadequate security for the mortgage debt.

In the case before us, the acts of the defendants, committed or intended to be committed, as found by the Court, consisted in the removal of the pendant fruit and the growing nursery stock. Injuries resulting from such acts are not irreparable. Full and adequate damages could be recovered in an action for the trespass, if the acts bring the case within the rule laid down in *Van Pelt* v. *McGraw*. The doing of these acts does not materially impair the value of the inheritance—the substance of the realty. It is not stated that the defendants are insolvent or unable to respond in damages for the alleged or threatened injury. The plaintiff, therefore, is not entitled to relief in equity. (2 Story's Eq. Juris., Sec. 925 ; *Burnett* v. *Whitesides*, 13 Cal. 156 ; *Hanson* v. *Gardner*, 7 Ves. 305, note.)

Judgment affirmed.