[L.A. No. 30393. In Bank. Dec. 1, 1975.]

MARY PAULINE CORNELISON, Plaintiff and Appellant, v.
O. JOHN KORNBLUTH, Defendant and Respondent.

592

**COUNSEL**

William J. Ferrin for Plaintiff and Appellant.

Levinson, Marcus & Bratter, Harvey Jay Migdal and Lawrence R. Lieberman for Defendant and Respondent.

Larwill, Wolfe & Blackstock and John Joseph Hall as Amici Curiae on Behalf of Defendant and Respondent.

**OPINION**

**SULLIVAN, J.**—In this action for damages for the breach of covenants contained in a deed of trust and for damages for waste, brought by the beneficiary against the trustors and their successors in interest, plaintiff Mary Cornelison appeals from a summary judgment entered in favor of defendant John Kornbluth and against plaintiff. As will appear, we have concluded that upon the record presented, the summary judgment was properly granted and should be affirmed.

On July 15, 1964, plaintiff sold a single-family dwelling in Van Nuys, California, to Maurice and Leona Chanon, taking back a promissory note in the sum of $18,800 secured by a first deed of trust on the property. The deed of trust, recorded on August 21, 1964, contained the following covenants: that the Chanons would pay the real property taxes and assessments against the property; that they would care for and maintain the property; and that if they resold the property, the entire unpaid balance would become immediately due and payable.

On December 10, 1964, the Chanons conveyed the property to defendant by grant deed. On September 6, 1968, defendant sold the property to Richard Larkins. In January 1969 the county health department condemned the house as unfit for human habitation. The Chanons being in default on the promissory note, plaintiff caused the property to be sold at a trustee's sale. Plaintiff purchased the property at the sale for the sum of $21,921.42, that being an amount equal to the balance due on the note plus foreclosure costs.

Plaintiff then brought the instant action for damages, her amended complaint (hereafter "complaint") filed March 24, 1970, setting forth two causes of action, one for breach of contract and one for damages for waste. The first cause of action alleged in substance that defendant "agreed in writing to be bound by and to perform all of the covenants contained in the Note and Deed of Trust theretofore executed by defendants Maurice L. Chanon and Leona Chanon"; and that defendants breached these covenants (a) by selling the property to Larkins, (b) by failing to pay property taxes, (c) by failing to make payments on the note, and (d) by failing to properly care for and maintain the premises.

The second cause of action, after incorporating by reference the material allegations of the first cause of action, alleged in substance that defendant owed a duty to properly and adequately care for the property and that defendant negligently failed to fulfill this duty, thereby causing plaintiff to be damaged in specified particulars and amounts by reason of the loss of improvements to the real property as well as by reason of the loss of its use. On the first cause of action plaintiff prayed for damages in the sum of $18,169.66, and on the second cause of action for damages in the sum of $20,000 plus the reasonable rental of the property, and in addition for $45,000 punitive damages.

Defendant's answer admitted that he purchased the property from the Chanons and sold it to Larkins, but denied all other allegations for lack

of information or belief. Defendant then moved for summary judgment. His declaration in support of the motion states in substance that he purchased the subject real property from the Chanons, that at the time of the purchase he knew it was encumbered by the deed of trust in favor of plaintiff as beneficiary, that he never assumed either orally or in writing the indebtedness secured by the deed of trust, and that no such assumption was contained in the deed conveying the property to him. The declaration attaches and incorporates by reference a copy of the grant deed which confirms the last statement.

Defendant also filed in support of the motion the declaration of one of his attorneys stating in substance that plaintiff regained possession of the subject property by purchasing it for $21,921.42 at the foreclosure sale conducted on June 4, 1969, said purchase having been effected "by a full credit bid resulting in the full satisfaction of the remaining indebtedness secured by the deed of trust . . . ." The declaration attaches and incorporates by reference a copy of the "trustees deed upon sale" which confirmed the statements of the declaration. Plaintiff filed no counteraffidavits. The court granted defendant's motion[1] and entered judgment accordingly. This appeal followed.

Plaintiff contends that the court erred in granting summary judgment because the "complaint is regular on its face and raises issues of fact." The argument in support of this contention boils down to this: The complaint alleges covenants contained in a recorded deed of trust to pay taxes and to keep the property in repair which covenants run with the land, a consequent duty on defendant to perform said covenants, and a breach of this duty. Defendant's answer placed all these material allegations in issue and defendant's declaration in support of the motion "contains no facts contrary to the allegations set forth in the complaint" and "do not refute the essential allegations."

It is clear to us that plaintiff gravely misunderstands the purpose and function of summary judgment procedure. The same contention now made by plaintiff was rejected by this court 25 years ago in a unanimous opinion by Chief Justice Traynor in the leading case of *Coyne* v.

---

[1]The court made the following order: "Motion for summary judgment in favor of defendant Kornbluth against plaintiff is now granted on the ground that the action has no merit as against said defendant in that there is no showing of a duty owing to plaintiff on the part of said defendant arising by contract (agreement) or otherwise to pay taxes on or to care for and maintain the real property and improvements in question; on the contrary, the absence of such a duty has been affirmatively shown by the uncontroverted declarations filed in support of the motion."

*Krempels* (1950) 36 Cal.2d 257, 262 [223 P.2d 244]. We there said: "In effect, it is contended that a motion for summary judgment cannot be granted unless the pleadings of the party opposing the motion are insufficient to state a cause of action or defense, for under defendant's contention a sufficient pleading raises a triable issue of fact requiring the denial of the motion.

"So construed, section 437c would be meaningless. 'It is not the purpose of the procedure under section 437c to test the sufficiency of the pleadings.' (*Eagle Oil & Ref. Co.* v. *Prentice,* 19 Cal.2d 553, 560 [122 P.2d 264].) . . . The procedure for the entry of a summary judgment provides a method by which, if the pleadings are not defective, the court may determine whether the triable issues apparently raised by them *are real or merely the product of adept pleading.*" (Italics added.)

Since *Coyne* v. *Krempels, supra,* we have had occasion to set forth the rules on summary judgments many times and we would hope that they are now well understood by the profession. (See, e.g., *Corwin* v. *Los Angeles Newspaper Service Bureau, Inc.* (1971) 4 Cal.3d 842, 851-852 [94 Cal.Rptr. 785, 484 P.2d 953]; *Joslin* v. *Marin Mun. Water Dist.* (1967) 67 Cal.2d 132, 146-148 [60 Cal.Rptr. 377, 429 P.2d 889].) ▮ For present purposes, we need be concerned only with the following rule: "Summary judgment is proper only if the affidavits in support of the moving party would be sufficient to sustain a judgment in his favor and his opponent does not by affidavit show such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue." (*Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785].)

▮ Applying the foregoing rule we are satisfied that defendant's declaration is sufficient to support a summary judgment on the first cause of action for breach of contract. As previously stated, the basic theory of this cause of action is that defendant had a duty to comply with the covenants contained in the deed of trust given plaintiff by the Chanons since the document was recorded and its covenants ran with the land. Plaintiff's legal premise is completely erroneous. ▮ Upon the transfer of real property covered by a mortgage or deed of trust as security for an indebtedness, the property remains subject to the secured indebtedness but the grantee is not personally liable for the indebtedness or to perform any of the obligations of the mortgage or trust deed unless his agreement to pay the indebtedness, or some note or memorandum thereof, is in writing and subscribed by him or his agent or his

assumption of the indebtedness is specifically provided for in the conveyance. (Civ. Code, § 1624, subd. 7; *Snidow* v. *Hill* (1948) 87 Cal.App.2d 803, 806-807 [197 P.2d 801].) ▮ Defendant's declaration states positively that he never assumed either orally or in writing the indebtedness secured by the Chanon deed of trust and that no such assumption was contained in the deed by which the Chanons conveyed the property to him. An examination of a copy of the deed attached to the declaration confirms this. Plaintiff filed no counterdeclaration denying these allegations and as a consequence raised no triable issue of fact. Contrary to plaintiff's contention, a triable issue of fact cannot be raised by the allegations of her complaint. (*Coyne* v. *Kremples, supra,* 36 Cal.2d 257, 262.) Accordingly, summary judgment on the first cause of action was properly granted.

We now proceed to determine whether defendant's declarations are sufficient to support the summary judgment on the second stated cause of action for waste. On this issue we may outline the positions of the parties as follows: Defendant contends that since, as set forth in his attorney's declaration, plaintiff purchased the property for a full credit bid an action for waste is thereby precluded both by reason of the antideficiency legislation (Code Civ. Proc., §§ 580b, 580d; *Schumacher* v. *Gaines* (1971) 18 Cal.App.3d 994 [96 Cal.Rptr. 223]) and by reason of the extinguishment of the security interest through a full credit bid at the trustee's sale. (*Duarte* v. *Lake Gregory Land and Water Co.* (1974) 39 Cal.App.3d 101, 105 [113 Cal.Rptr. 893].) Plaintiff on the other hand contends that an action for waste may be maintained independently of the antideficiency provisions of sections 580b and 580d of the Code of Civil Procedure.

In order to resolve this issue it is necessary to first define, and trace the history of an action for waste and secondly to analyze the impact of the antideficiency legislation induced by the depression of the 1930's upon this traditional action.

Section 2929 of the Civil Code provides: "Waste. No person whose interest is subject to the lien of a mortgage may do any act which will substantially impair the mortgagee's security." This section, enacted in 1872, codified a portion of the common law action for waste, as developed in England and adopted in earlier California cases. ▮ "[W]aste is conduct (including in this word both acts of commission and of omission) on the part of the person in possession of land which is actionable at the behest of, and for protection of the

reasonable expectations of, another owner of an interest in the same land. . . . Thus, waste is, functionally, a part of the law which keeps in balance the conflicting desires of persons having interests in the same land." (5 Powell on Real Property (1974) § 636, pp. 5-6.)

The action for waste originated in the early common law sometime during the 12th century. Initially, it was designed to protect owners of succeeding estates of inheritance from the improper conduct of the person in possession which harmed the property. As the action evolved during the ensuing development of the common law, it was broadened so as to afford protection to concurrent holders of interests in land who were out of possession (e.g., mortgagees) from harm committed by persons who were in possession (e.g., mortgagors). Recognition of this enlarged purpose of the remedy was given in the United States in the leading case of *Van Pelt* v. *McGraw* (1850) 4 N.Y. (4 Comst.) 110 where the court held that a holder of a mortgage on lands had an action on the case against the mortgagor for acts of waste committed by the latter with knowledge that the value of the security would thereby be injured. *Van Pelt* clearly set forth the measure of damages: "Now this action is not based upon the assumption that the plaintiff's [mortgagee's] land has been injured, but that his mortgage as a security has been impaired. His damages, therefore, would be limited to the amount of injury to the mortgage, however great the injury to the land might be." (*Id.,* at p. 112.)

Over a century ago this court in *Robinson* v. *Russell* (1864) 24 Cal. 467, 472-473, relying upon *Van Pelt,* declared that an action on the case could be maintained by the mortgagee of real property for damages for injuries done to the property which impaired the mortgage security and that action for an injunction would lie to restrain the commission of waste on the premises.[2] It was this cause of action that was codified in 1872 as Civil Code section 2929.[3]

---

[2]"There can be no doubt but that an action can be maintained by the mortgagee for injuries of the character set forth in the complaint in this case, when it appears that by the acts complained of the mortgage security is impaired. . . . There can be as little doubt that the mortgagee may, by injunction, stay the commission of waste upon the mortgaged premises, when he makes a proper case in equity and shows that the commission of the threatened acts will materially impair the value of the property subject to the lien so as to render it an inadequate security for the mortgage debt." (*Robinson* v. *Russell, supra,* at p. 473.)

[3]It is thus clear that waste insofar as it involves protection for the security interest of mortgagees (Civ. Code, § 2929) is limited to protection against harm committed by persons in possession of the property subject to the lien. However, it is equally clear that a mortgagee's security interest can be impaired by harm to the property committed by third persons not in possession and that a mortgagee can recover damages in tort for such impairment of his security interest. (*American Sav. & Loan Assn.* v. *Leeds* (1968) 68 Cal.2d 611, 614, fn. 2 [68 Cal.Rptr. 453, 440 P.2d 933]; *Easton* v. *Ash* (1941) 18 Cal.2d 530, 539 [116 P.2d 433]; *Lavenson* v. *Standard Soap Co.* (1889) 80 Cal. 245, 246 [22 P.

Section 2929 of the Civil Code, though referring only to "the lien of a *mortgage*" (italics added) and to the impairment of "the *mortgagee's* security," (italics added) applies equally to a deed of trust, since a mortgage with power of sale and a deed of trust are treated similarly in California and both are considered as security interests protected from impairment.[4] (Hetland, Cal. Real Estate Secured Transactions (Cont. Ed. Bar 1970) § 2.7, pp. 11-12; see *American Sav. & Loan Assn.* v. *Leeds, supra,* 68 Cal.2d 611, 614, fn. 2; *U.S. Financial* v. *Sullivan, supra,* 37 Cal.App.3d 5, 15.) The statute imposes a duty not to commit waste upon any "person whose interest is subject to the lien." Although a nonassuming grantee of mortgaged property is not personally liable on the debt, his interest in the property is subject to the lien (*Braun* v. *Crew* (1920) 183 Cal. 728, 731 [192 P. 531]; *Hibernia Sav. etc. Soc.* v. *Dickinson* (1914) 167 Cal. 616, 621 [140 P. 265]) and therefore he is under a duty not to impair the mortgagee's security. Defendant as a nonassuming grantee of the property subject to plaintiff's deed of trust was under a duty not to commit waste.

Defendant contends, however, that assuming arguendo that he was under a duty not to commit waste and that his acts or omissions constituted waste by so materially impairing the value of the property as to render it inadequate security for the mortgage debt, nevertheless plaintiff is not entitled to recover because such recovery for waste would amount to a deficiency judgment proscribed by sections 580b[5] and 580d[6]

---

184]; *U.S. Financial* v. *Sullivan* (1974) 37 Cal.App.3d 5, 15-17 [112 Cal.Rptr. 18]; *Los Angeles T. & S. Bk.* v. *Bortenstein* (1920) 47 Cal.App. 421, 424 [190 P. 850].) This recovery against third parties involves different considerations and rules because the person sued is not the debtor-mortgagor, who is afforded a variety of legislative and judicial protections (see *U.S. Financial* v. *Sullivan, supra,* 37 Cal.App.3d 5, 15; Denton, *Right of a Mortgagee to Recover Damages from a Third Party for Injury to Mortgaged Property in Ohio* (1937) 3 Ohio St.L.J. 161.)

[4]Since mortgages with power of sale and deeds of trust are both covered by Civil Code section 2929, the terms "mortgagor" and "mortgagee" will be used on occasion to include rights of trustor and beneficiary pursuant to a deed of trust in order to simplify terminology in the opinion. Nevertheless from time to time where appropriate according to the context, we will use the terms "trustor," "trustee" and "beneficiary."

[5]Section 580b provides in relevant part: "No deficiency judgment shall lie in any event after any sale of real property for failure of the purchaser to complete his contract of sale, or under a deed of trust, or mortgage, given to the vendor to secure payment of the balance of the purchase price of real property, or under a deed of trust, or mortgage, on a dwelling for not more than four families given to a lender to secure repayment of a loan which was in fact used to pay all or part of the purchase price of such dwelling occupied, entirely or in part, by the purchaser."

Hereafter, unless otherwise noted, all section references are to the Code of Civil Procedure.

[6]Section 580d provides: "No judgment shall be rendered for any deficiency upon a note secured by a deed of trust or mortgage upon real property hereafter executed in any

of the Code of Civil Procedure. In order to resolve this contention it is necessary to briefly summarize the array of legislation in the field of secured transactions in real property spawned by the depression of the 1930's.

Prior to 1933, a mortgagee of real property was required to exhaust his security before enforcing the debt or otherwise to waive all right to his security (§ 726; see *Walker* v. *Community Bank* (1974) 10 Cal.3d 729, 733-734 [111 Cal.Rptr. 897, 518 P.2d 329]). However, having resorted to the security, whether by judicial sale or private nonjudicial sale, the mortgagee could obtain a deficiency judgment against the mortgagor for the difference between the amount of the indebtedness and the amount realized from the sale. As a consequence during the great depression with its dearth of money and declining property values, a mortgagee was able to purchase the subject real property at the foreclosure sale at a depressed price far below its normal fair market value and thereafter to obtain a double recovery by holding the debtor for a large deficiency. (*Roseleaf Corp.* v. *Chierighino* (1963) 59 Cal.2d 35, 40 [27 Cal.Rptr. 873, 378 P.2d 97]; see Glenn, Mortgages (1943) § 156, pp. 857-861.) In order to counteract this situation, California in 1933 enacted fair market value limitations applicable to both judicial foreclosure sales (§ 726)[7] and private foreclosure sales (§ 580a)[8] which limited the mortgagee's

case in which the real property has been sold by the mortgagee or trustee under power of sale contained in such mortgage or deed of trust.

"The provisions of this section shall not apply to any deed of trust, mortgage or other lien given to secure the payment of bonds or other evidences of indebtedness authorized or permitted to be issued by the Commissioner of Corporations, or which is made by a public utility subject to the provisions of the Public Utilities Act."

[7]Section 726 provides in part: "In the event that a deficiency is not waived or prohibited and it is decreed that any defendant is personally liable for such debt, then upon application of the plaintiff filed at any time within three months of the date of the foreclosure sale and after a hearing thereon at which the court shall take evidence and at which hearing either party may present evidence as to the fair value of the property or the interest therein sold as of the date of sale, the court shall render a money judgment, against such defendant or defendants for the amount by which the amount of the indebtedness with interest and costs of sale and of action exceeds the fair value of the property or interest therein sold as of the date of sale; provided, however, that in no event shall the amount of said judgment, exclusive of interest from the date of sale and of costs exceed the difference between the amount for which the property was sold and the entire amount of the indebtedness secured by said mortgage or deed of trust."

[8]Section 580a provides: "Whenever a money judgment is sought for the balance due upon an obligation for the payment of which a deed of trust or mortgage with power of sale upon real property or any interest therein was given as security, following the exercise of the power of sale in such deed of trust or mortgage, the plaintiff shall set forth in his complaint the entire amount of the indebtedness which was secured by said deed of trust or mortgage at the time of sale, the amount for which such real property or interest therein was sold and the fair market value thereof at the date of sale and the date

deficiency judgment after exhaustion of the security to the difference between the fair value of the property at the time of the sale (irrespective of the amount actually realized at the sale) and the outstanding debt for which the property was security. Therefore, if, due to the depressed economic conditions, the property serving as security was sold for less than the fair value as determined under section 726 or section 580a, the mortgagee could not recover the amount of that difference in his action for a deficiency judgment. (See Hetland, Secured Real Estate Transactions (Cont. Ed. Bar 1974) § 9.3, pp. 183-184.)

In certain situations, however, the Legislature deemed even this partial deficiency too oppressive. Accordingly, in 1933 it enacted section 580b (see fn. 5, *ante*) which barred deficiency judgments altogether on purchase money mortgages. "Section 580b places the risk of inadequate security on the purchase money mortgagee. A vendor is thus discouraged from overvaluing the security. Precarious land promotion schemes are discouraged, for the security value of the land gives purchasers a clue as to its true market value. [Citation.] If inadequacy of security results, not from overvaluing, but from a decline in property values during a general or local depression, section 580b prevents the aggravation of the downturn that would result if defaulting purchasers were burdened with large personal liability. Section 580b thus serves as a stabilizing factor in land sales." (*Roseleaf Corp.* v. *Chierighino, supra*, 59 Cal.2d 35, 42; see also *Spangler* v. *Memel* (1972) 7 Cal.3d 603, 612 [102 Cal.Rptr. 807, 498

---

of such sale. Upon the application of either party made at least ten days before the time of trial the court shall, and upon its own motion the court at any time may, appoint one of the inheritance tax appraisers provided for by law to appraise the property or the interest therein sold as of the time of sale. Such appraiser shall file his appraisal with the clerk and the same shall be admissible in evidence. Such appraiser shall take and subscribe an oath to be attached to the appraisal that he has truly, honestly and impartially appraised the property to the best of his knowledge and ability. Any appraiser so appointed may be called and examined as a witness by any party or by the court itself. The court must fix the compensation of such appraiser, not to exceed five dollars per day, and expenses for the time actually engaged in such appraisal, which may be taxed and allowed in like manner as other costs. Before rendering any judgment the court shall find the fair market value of the real property, or interest therein sold, at the time of sale. The court may render judgment for not more than the amount by which the entire amount of the indebtedness due at the time of sale exceeded the fair market value of the real property or interest therein sold at the time of sale with interest thereon from the date of the sale; provided, however, that in no event shall the amount of said judgment, exclusive of interest after the date of sale, exceed the difference between the amount for which the property was sold and the entire amount of the indebtedness secured by said deed of trust or mortgage. Any such action must be brought within three months of the time of sale under such deed of trust or mortgage. No judgment shall be rendered in any such action until the real property or interest therein has first been sold pursuant to the terms of such deed of trust or mortgage, unless such real property or interest therein has become valueless."

P.2d 1055]; *Bargioni v. Hill* (1963) 59 Cal.2d 121, 123 [28 Cal.Rptr. 321, 378 P.2d 593].)

Although both judicial foreclosure sales and private nonjudicial foreclosure sales provided for identical deficiency judgments in nonpurchase money situations subsequent to the 1933 enactment of the fair value limitations, one significant difference remained, namely property sold through judicial foreclosure was subject to the statutory right of redemption (§ 725a), while property sold by private foreclosure sale was not redeemable. By virtue of sections 725a and 701, the judgment debtor, his successor in interest or a junior lienor could redeem the property at any time during one year after the sale, frequently by tendering the sale price. The effect of this right of redemption was to remove any incentive on the part of the mortgagee to enter a low bid at the sale (since the property could be redeemed for that amount) and to encourage the making of a bid approximating the fair market value of the security. However, since real property purchased at a private foreclosure sale was not subject to redemption, the mortgagee by electing this remedy, could gain irredeemable title to the property by a bid substantially below the fair value and still collect a deficiency judgment for the difference between the fair value of the security and the outstanding indebtedness.

In 1940 the Legislature placed the two remedies, judicial foreclosure sale and private nonjudicial foreclosure sale on a parity by enacting section 580d (see fn. 6, *ante*). Section 580d bars "any deficiency judgment" following a private foreclosure sale. "It seems clear . . . that section 580d was enacted to put judicial enforcement on a parity with private enforcement. This result could be accomplished by giving the debtor a right to redeem after a sale under the power. The right to redeem, like proscription of a deficiency judgment, has the effect of making the security satisfy a realistic share of the debt. [Citation.] By choosing instead to bar a deficiency judgment after private sale, the Legislature achieved its purpose without denying the creditor his election of remedies. If the creditor wishes a deficiency judgment, his sale is subject to statutory redemption rights. If he wishes a sale resulting in nonredeemable title, he must forego the right to a deficiency judgment. In either case the debtor is protected." (*Roseleaf Corp.* v. *Chierighino, supra,* 59 Cal.2d 35, 43-44.)

In the case at bench, we are now called upon to determine the effect of this antideficiency legislation upon the statutory action for waste. (Civ. Code, § 2929.) It will be recalled that damages in an action for waste are

measured by the amount of injury to the security caused by the mortgagor's acts, that is by the substantial harm which "impair[s] the value of the property subject to the lien so as to render it an inadequate security for the mortgage debt." (*Robinson* v. *Russell, supra,* 24 Cal. 467, 473.) A deficiency judgment is a personal judgment against the debtor-mortgagor for the difference between the fair market value of the property held as security and the outstanding indebtedness. (§ 726.) It is clear that the two judgments against the mortgagor, one for waste and the other for a deficiency, are closely interrelated and may often reflect identical amounts. If property values in general are declining, a deficiency judgment and a judgment for waste would be identical up to the point at which the harm caused by the mortgagor is equal to or less than the general decline in property values resulting from market conditions. When waste is committed in a depressed market, a deficiency judgment, although reflecting the amount of the waste, will of course exceed it if the decline of property values is greater. However, when waste is committed in a rising market, there will be no deficiency judgment, unless the property was originally overvalued; in this event, there would be no damages for waste unless the impairment due to waste exceeded the general increase in property values.

Mindful of the foregoing, we now proceed to arrive at an assessment of the effect of sections 580b and 580d upon an action for waste. ■ First, we examine the 580b proscription of a deficiency judgment after any foreclosure sale, private or judicial, of property securing a purchase money mortgage. The primary purpose of section 580b is "in the event of a depression in land values, to prevent the aggravation of the downturn that would result if defaulting purchasers lost the land and were burdened with personal liability." (*Bargioni* v. *Hill, supra,* 59 Cal.2d 121, 123.) It is clear that allowing an action for waste following a foreclosure sale of property securing purchase money mortgages may often frustrate this purpose. Damages for waste would burden the defaulting purchaser with both loss of land and personal liability and the acts giving rise to that liability would have been caused in many cases by the economic downturn itself. For example, a purchaser caught in such circumstances may be compelled in the normal course of events to forego the general maintenance and repair of the property in order to keep up his payments on the mortgage debt. If he eventually defaults and loses the property, to hold him subject to additional liability for waste would seem to run counter to the purpose of section 580b and to permit the purchase money lender to obtain what is in effect a deficiency judgment. It is of course true that not all owners of real property subject to a purchase money

mortgage commit waste solely or primarily as a result of the economic pressures of a market depression; indeed many are reckless, intentional, and at times even malicious despoilers of property. In these latter circumstances to which we shall refer for convenience as waste committed in bad faith, the purchase money lender should not go remediless since they do not involve the type of risk intended to be borne by him in promoting the objectives of section 580b alluded to above.

Accordingly, we hold that section 580b should apply to bar recovery in actions for waste following foreclosure sale in the first instance but should not so apply in the second instance of "bad faith" waste. We further hold that it is within the province of the trier of fact to determine on a case by case basis to what, if any, extent the impairment of the mortgagee's security has been caused (as in the first instance) by the general decline of real property values and to what, if any, extent (as in the second instance) by the bad faith acts of the mortgagor, such determination, in either instance, being subject to review under the established rule of appellate review.[9]

■ We now turn to assess the effect upon an action for waste of section 580d which applies to a nonpurchase money mortgage. We are satisfied that a different analysis must be pursued. It will be recalled from our earlier discussion that the Legislature intended to establish parity between judicial foreclosure and private foreclosure by denying a deficiency judgment subsequent to a private sale. Under a judicial foreclosure, the mortgagee is entitled to a deficiency judgment, but must bear the burden of a statutory redemption; under a private sale the mortgagee need not bear the burden of redemption, but cannot recover any deficiency judgment. If following a nonjudicial sale the mortgagee were allowed to obtain a judgment for damages for waste against the mortgagor, he would have the double benefits of an irredeemable title to the property and a personal judgment against the mortgagor for the impairment of the value of the property. This would essentially destroy

---

[9]This holding is entirely consistent with the following statement by this court in *American Sav. & Loan Assn.* v. *Leeds, supra,* 68 Cal.2d 611, 614, footnote 2: "If plaintiff [in an action for tortious damage to security] were attempting to reach substitute property, it could do so without being barred by section 580b of the Code of Civil Procedure." While the footnote does include references to actions for waste against mortgagors, "the substitute property" referred to is money recovered from third parties who tortiously damage the security, as explained in the case cited in the footnote, *Los Angeles T. & S. B.* v. *Bortenstein* (1920) 47 Cal.App. 421, 424 [190 P. 850]. As noted in footnote 3, *ante,* in this opinion, actions by mortgagees against nonpossessing third parties for tortious impairment of security are not affected by the antideficiency legislation.

the parity between judicial foreclosure and private foreclosure in all instances where the waste is actually caused by general economic conditions, since as we have explained, such recovery is in effect a deficiency judgment. If, however, the recovery is limited to waste committed in "bad faith," then the personal judgment would be entirely independent of the problems encompassed by the antideficiency legislation and would not affect the parity of remedies. Accordingly, we hold that in situations arising under section 580d, recovery for waste against the mortgagor following nonjudicial foreclosure sale is barred by the section's proscription against deficiency judgments when the waste actually results from the depressed condition of the general real estate market but not when the waste is caused by the "bad faith" acts of the mortgagor.

■ Plaintiff contends, however, that neither section 580b nor section 580d applies to an action for waste against defendant because the latter was not the original mortgagor but a successor in interest. As noted in footnote 3, *ante,* a mortgagee can recover damages in tort for impairment of his security interest by nonpossessing third parties and this action is not limited by the antideficiency legislation protecting the debtor-mortgagor. In essence plaintiff contends that a successor owner of real property who impairs the mortgagee's security interest should be treated as a third party.

After a careful consideration of this argument, we conclude that it must be rejected as without merit. First as to section 580b, its protection against a deficiency judgment is extended to the successors in interest of the original mortgagor or trustor notwithstanding an express assumption of the indebtedness. (See *Stockton Sav. & Loan Bank* v. *Massanet* (1941) 18 Cal.2d 200, 208-209 [114 P.2d 592]; *Jackson* v. *Taylor* (1969) 272 Cal.App.2d 1, 5 [76 Cal.Rptr. 891]; Hetland, Cal. Real Estate Secured Transactions (Cont. Ed. Bar 1970) § 6.25, pp. 273-274.) Accordingly, it would be illogical, we think, to subject successors in interest who do not assume the indebtedness to a greater liability than those who do assume it by permitting recovery against the former of damages for waste caused by a market downturn and not committed in "bad faith." Furthermore to permit such recovery would, in our opinion, impede if not defeat the policy underlying section 580b of preventing the aggravation of a depression in land values. (*Bargioni* v. *Hill, supra,* 59 Cal.2d 121, 123.) Secondly, as to section 580d, although the underlying policy is not so directly compelling and the nonassuming successor in interest somewhat in the position of a third party, nevertheless, in view of the interrelation

of the two sections and the parity established between them as explained above, we are convinced that recovery against nonassuming successors in interest for waste caused by a market downturn and not committed in "bad faith" should not be permitted after a nonjudicial foreclosure sale. In sum, we conclude that in respect to waste not committed in "bad faith," the nonassuming successor in interest is not liable either after a judicial sale or a nonjudicial one.

While our foregoing conclusion may expose defendant to liability on the basis of having committed "bad faith" waste, the question need not be resolved. We have further concluded that even assuming that defendant is liable on such basis, nevertheless plaintiff cannot recover since she purchased the subject property at the trustee's sale by making a full credit bid.[10] As stated previously, the measure of damages for waste is the amount of the impairment of the security, that is the amount by which the value of the security is less than the outstanding indebtedness and is thereby rendered inadequate. (*Robinson* v. *Russell, supra,* 24 Cal. 467, 473.) The point of defendant's argument is that the mortgagee's purchase of the property securing the debt by entering a full credit bid establishes the value of the security as being equal to the outstanding indebtedness and ipso facto the nonexistence of any impairment of the security. As applied to the factual context of the instant case, the argument is that the purchase by plaintiff-vendor-beneficiary of the property covered by the purchase money deed of trust pursuant to a full credit bid made and accepted at the nonjudicial foreclosure sale resulted in a total satisfaction of the secured obligation. We agree.

Where an indebtedness secured by a deed of trust covering real property has been satisfied by the trustee's sale of the property on foreclosure for the full amount of the underlying obligation owing to the beneficiary, the lien on the real property is extinguished. (Civ. Code, § 2910; *Streiff* v. *Darlington* (1973) 9 Cal.2d 42, 45 [68 P.2d 728]; *Duarte* v. *Lake Gregory Land and Water Co., supra,* 39 Cal.App.3d 101, 104-105.) In such event, the creditor cannot subsequently recover insurance proceeds payable for damage to the property (*Reynolds* v. *London etc. Ins. Co.* (1900) 128 Cal. 16, 19-20 [60 P. 467]; *Duarte* v. *Lake Gregory Land and Water Co., supra,* 39 Cal.App.3d at p. 105; *Rosenbaum* v. *Funcannon* (9th Cir. 1962) 308 F.2d 680, 684-685), net rent proceeds (*Eastland S. & L. Assn.* v. *Thornhill & Bruce, Inc.* (1968) 260 Cal.App.2d 259, 261-262 [66 Cal.Rptr. 901]), or damages for waste (*Schumacher* v.

---

[10]That is, in an amount equal to the unpaid principal and interest of the mortgage debt, together with the costs, fees and other expenses of the foreclosure.

*Gaines* (1971) 18 Cal.App.3d 994 [96 Cal.Rptr. 223]). "[T]he purpose of the trustee's sale is to resolve the question of value and the question of potential forfeiture through competitive bidding . . . ." (Hetland, Cal. Real Estate Secured Transactions (Cont. Ed. Bar 1970) p. 255.) In *Smith* v. *Allen* (1968) 68 Cal.2d 93, 95-96 [65 Cal.Rptr. 153, 436 P.2d 65], this court held that a nonjudicial foreclosure sale, if regularly held, finally fixes the value of the property therein sold.

At the nonjudicial foreclosure sale, the beneficiary is entitled to make a credit bid up to the amount of his indebtedness, since it would be useless to require him to tender cash which would only be immediately returned to him. (*Central Sav. Bank of Oakland* v. *Lake* (1927) 201 Cal. 438, 447-448 [257 P. 521].) However, the mortgagee is not required to open the bidding with a full credit bid, but may bid whatever amount he thinks the property worth. Indeed "many creditors continually enter low credit bids . . . to provide access to additional security or additional funds." (Hetland, Secured Real Estate Transactions (Cont. Ed. Bar 1974) p. 196.) It has been said that this is what the creditor should do: " 'Of course, the situation would have been different if the loss-payable mortgagee, Rosenbaum had bid less for the property as was her right. In such case, a deficiency balance of the debt would have remained for which she would have had an entitlement out of the insurance policy. The extinguishment of the mortgage or deed of trust by the foreclosure would not have affected her right to be paid the remainder of the debt under the policy. [¶] However, this was not done. Presumably, Rosenbaum bid what she thought the security property to be worth in its condition at the time of her bid. To bid more than the property was then actually worth was not required of her, nor would such a bid be sensible.' " (*Rosenbaum* v. *Funcannon, supra,* 308 F.2d 680, 685.)

Exactly the same situation obtains with respect to an action for waste. If the beneficiary or mortgagee at the foreclosure sale enters a bid for the full amount of the obligation owing to him together with the costs and fees due in connection with the sale, he cannot recover damages for waste, since he cannot establish any impairment of security, the lien of the deed of trust or mortgage having been theretofore extinguished by his full credit bid and all his security interest in the property thereby nullified. If, however, he bids less than the full amount of the obligation and thereby acquires the property valued at less than the full amount, his security has been impaired and he may recover damages for waste in an amount not exceeding the difference between the amount of his bid and the full amount of the outstanding indebtedness immediately prior to the foreclosure sale.

Plaintiff complains that it is difficult to calculate precisely the amount of damages recoverable for waste so as to determine the proper amount which the beneficiary or mortgagee should bid at the foreclosure sale; therefore, she urges, it is unfair to impose such a burden on the beneficiary or mortgagee. Suffice it to say that no complicated calculations are necessary. The beneficiary or mortgagee need only enter a credit bid in an amount equal to what he assesses the fair market value of the property to be in its condition at the time of the foreclosure sale. If that amount is below the full amount of the outstanding indebtedness and he is successful in acquiring the property at the foreclosure sale, he may then recover any provable damages for waste.

To recapitulate, we conclude that the trial court properly granted summary judgment in favor of defendant and against plaintiff (1) as to the first cause of action for breach of contract since defendant at no time assumed the underlying indebtedness; and (2) as to the second cause of action for waste since, although defendant as a nonassuming grantor could be held liable for waste if proved to have been committed in bad faith, nevertheless plaintiff can establish no impairment of security, having acquired the property at the foreclosure sale by making a full credit bid.

The judgment is affirmed.

Wright, C. J., McComb, J., Tobriner, J., Mosk, J., Clark, J., and Richardson, J., concurred.