**ALTUS BANK, a federal savings bank, Plaintiff,**

v.

**STATE FARM FIRE AND CASUALTY COMPANY, an Illinois corporation, Defendant.**

**No. CV91–340–JSL.**

United States District Court, C.D. California, Los Angeles Division.

Jan. 23, 1991.

568

Martin Burke, Burke, Williams & Sorenson, Los Angeles, Cal., for plaintiff.

Melody Mosley, Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone, Irvine, Cal., for defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

LETTS, District Judge.

Defendant State Farm Fire and Casualty Company ("State Farm") has moved for summary judgment in this insurance bad faith action brought by plaintiff Altus Bank. Having reviewed the papers filed in connection with this matter, having heard oral argument, and being fully apprised of the relevant facts and law, the Court finds

that the motion for summary judgment should be GRANTED.

## FACTS

In August 1987, Larry and Susan Youngblood executed a deed of trust securing a home mortgage loan made by Westwind Mortgage Corporation ("Westwind"). Shortly thereafter, State Farm issued a homeowner's insurance policy ("the policy") covering the Youngbloods' property and naming Westwind as the mortgagee. In September 1987, Westwind assigned its interest in the Youngbloods' loan to Altus Bank, and State Farm was duly notified.

On October 2, 1987, the house covered by the mortgage was destroyed by fire. The Youngbloods, who had made no mortgage payments on the property, filed a claim with State Farm for the total amount of policy coverage. State Farm suspected arson and commenced a full investigation.

Altus Bank, as mortgagee of the insured property, made a claim for the full amount of the mortgage debt (principal plus accrued interest). The Youngbloods defaulted on their loan, and in August 1988, Altus Bank began foreclosure proceedings. Altus Bank retained the California law firm of Shapiro & Miles to conduct the foreclosure. At the trustee's foreclosure sale on January 5, 1989, Altus Bank made a "full credit bid" and successfully purchased the property.

State Farm has denied Altus Bank's insurance claim. State Farm does not dispute that the debt is in default, or that the fire loss exceeds the full amount of the mortgage debt, but has refused to pay the claim. It has done so because Altus Bank purchased the insured property at the mortgage foreclosure sale for an amount which fully extinguished the mortgage debt, and reduced the loss on the mortgage to zero.

## DISCUSSION

The issues posed are quite simple: (1) whether Altus Bank had the right under the policy or under California law to charge State Farm with a fire loss measured by the difference in the value of the property after the fire and the amount of the mortgage debt, rather than by the difference between the purchase price and the amount of debt, and (2) whether Altus Bank's allegedly above-market purchase price was an "innocent mistake" which should not create a windfall to State Farm by allowing them to deny coverage. The resolution of these issues moots all of the other issues which appear to make this case complex as argued by the parties.

Both under the policy and under California law, the rights of a mortgagee as an insured under a standard homeowner's policy are clear. When the loss exceeds the full amount of the mortgage debt, the mortgagee can either (1) require the insurer to pay-off the mortgage debt in its full amount, in which case the mortgagee must give up the mortgage and any other security it holds for collateral, *or* (2) foreclose on the mortgage and allow the property to go to the highest bidder. If the mortgagee chooses to foreclose on the mortgage, the proceeds of the mortgage sale are applied to the mortgage debt so as to extinguish the corresponding amount of insurance liability. *See infra* p. 571.

Altus Bank contends that the evidence at trial would show that State Farm took unreasonably long to investigate the Youngblood claim. Altus Bank also contends that, in any event, State Farm had no right to delay payment to Altus Bank while the Youngblood investigation continued. On the record before it, the court finds both of these contentions to be doubtful. For the purposes of decision, however, the court has assumed that the Youngblood investigation took unreasonably long, and that after the point at which the length of the investigation became unreasonable, Altus Bank was entitled to prompt payment of its claim free of any defenses.

In analyzing Altus Bank's intentions, it is necessary first to understand that a successful full credit bid is no different from any other kind of successful bid at a foreclosure sale, as to its effect on the amount of any remaining insurance claim, and then these arguments fall of their own weight.

Altus Bank's arguments depend on the erroneous premise that State Farm had reason to believe and hope that Altus Bank would pay more than the mortgaged property was worth. *See infra* p. 571.

Altus Bank does not, and could not, seriously contend that the debt would not have been extinguished if some other purchaser had acquired the property at the mortgage sale for the same amount of money. Altus Bank also suggests no reason why the result would be different if Altus Bank itself had tendered cash to purchase the mortgaged property at the foreclosure sale, rather than electing to use the more convenient method of simply tendering the mortgage debt *in lieu* of cash. The dollar amount of the proceeds establishes the amount to be applied to extinguish the debt, regardless of the form in which the proceeds are tendered or of the identity of the purchaser. The full credit bid by Altus Bank cut-off other offers which might have been forthcoming, for up to $1 less than the amount of the mortgage debt, exactly to the same extent that any such offers would have been cut-off by a cash bid of the same amount from an outside source. Altus Bank was free to choose the point at which it would enter the bidding and the point at which it would let the property go to some other bidder.

Why Altus Bank might choose to purchase the property for the full amount of the debt owed to it, with reason to believe that the property could be acquired at a much lower price, is of concern only to Altus Bank. It is of no concern to State Farm. If it is true that the property was not purchased at its fair market value at the foreclosure sale, it is only because Altus Bank made that impossible by bidding too high.

California courts have held that the purchaser at a foreclosure sale has the duty to assess the value of property correctly. *Sumitomo Bank of California v. Taurus Developers*, 185 Cal.App.3d 211, 229 Cal.Rptr. 719, 727 (1986). The mortgagee is not required to open the bidding with a full credit bid, but may bid whatever amount it thinks the property worth. *Cornelison v. Kornbluth*, 15 Cal.3d 590, 607, 125 Cal.Rptr. 557, 542 P.2d 981 (1975). Altus Bank has cited no authority to suggest that insurers have any responsibility to aid mortgagees in assessing the appropriate amount to bid so that the appropriate amount of insurable interest will be extinguished. Therefore insurers have no duty to inform insureds that a full credit bid will extinguish the full insurable interest.

If Altus Bank thought the price bid by some other bidder at a bona-fide auction was too high, they had the right to let the property go to the higher bidder.[1] Altus Bank could then collect the difference between the successful bid and the mortgage debt from State Farm, and be in the same position economically as if it had foregone the foreclosure and tendered the mortgage to State Farm. None of the foreseeable legitimate foreclosure sale outcomes presented any conflict between the interests of State Farm and those of Altus Bank. Indeed to allow the foreclosure sale to go forward and allow Altus Bank to acquire the property as the successful bidder at a fair auction might well have seemed in the best interest of all concerned.

In reality, Altus Bank's contention is not that State Farm should have warned Altus Bank about any unique consequence of a full credit bid, because such a bid has no unique consequence. Altus Bank's real contention is that it should have been warned that if in order to obtain the mortgaged property at the foreclosure sale, Altus Bank paid more than the property was worth, it would not be able to recover the difference between what it paid and what

1. State Farm, in turn, could have protected itself from a "low ball" bid by Altus Bank simply by appearing at the auction. For this reason, it would have been reasonable and not improper for State Farm to assure itself that Altus Bank intended to bid at least market value for the property so that it would not be obliged to attend. The issue of what duties State Farm might have had if in the course of such an inquiry it had learned that Altus Bank intended to make a full credit bid is not raised here.

the property was worth from State Farm. Nothing in the policy, or in the California law under which it must be interpreted, suggests that a mortgagee can bid-in property at a mortgage sale for more than it is worth and have any part of the difference between the amount paid and the true worth survive as part of an insurance claim on the mortgage debt.

■ Not surprisingly, it is well settled under California and Ninth Circuit law, that a full credit bid extinguishes a mortgagee's debt and precludes any recovery by a mortgagee under the provisions of the insurance policy ("full credit bid rule"). *Reynolds v. London,* 128 Cal. 16, 60 P. 467 (1900). The Ninth Circuit has consistently held that a full or partial extinguishment of mortgage debt precludes, to the extent thereof, any recovery on a loss by the loss payable mortgagee. A mortgagee's insurable interest under an insurance policy is limited to the amount of the debt. Once the debt has been fully extinguished by the full credit bid, so has the insurable interest. *Universal Mortgage Co., Inc. v. Prudential Ins. Co.,* 799 F.2d 458, 460 (9th Cir. 1986); *Rosenbaum v. Funcannon,* 308 F.2d 680, 684 (9th Cir.1962); *Reynolds v. London,* 128 Cal. 16, 60 P. 467 (1900).

■ Altus Bank argues that State Farm should be estopped from asserting that the full credit bid extinguished the mortgage debt and thereby reduced Altus Bank's claim against State Farm to zero. It bases its estoppel theory on the alleged fact that after State Farm's obligation to tender prompt payment of the Altus Bank claim became fixed and present, State Farm deliberately delayed tendering such payment until after the foreclosure sale "in the hope" that Altus Bank would make the "mistake" that it allegedly did make. Altus Bank also makes the corollary argument that State Farm, as insurer, had a duty to prevent Altus Bank from making such a mistake.

Altus Bank offers no explanation of why an insured, acting in good faith with respect to its insurer, might think that it would have the right to acquire the mortgaged property by choking-off any offers in the range of the true value of the property with a preemptive bid and then to assert that its insurance loss was measured by anything other than the price which it bid at auction to acquire the property. It follows, of course, that Altus Bank offers no explanation why State Farm should have foreseen that Altus Bank would expect to be able to have its mortgage debt fully paid by State Farm without giving State Farm the benefit either of the mortgage or of the proceeds of a bona-fide auction mortgage foreclosure sale.

The court denied an early motion to dismiss this case before discovery, specifically so that Altus Bank could try to discover evidence that State Farm had actual knowledge that Altus Bank contemplated making a full credit bid at the foreclosure sale and delayed payment in the knowing expectation that Altus would "mistakenly" make a full credit bid. No such evidence has been found. No evidence has been found that State Farm had any advance reason to believe that Altus Bank would knowingly purchase the property at the foreclosure sale at any price more than it believed the property to be worth. Altus Bank has urged no reason why State Farm had reason in advance to speculate that Altus Bank would make some "mistake" or that whatever Altus did at the foreclosure sale would be contrary to its own informed best interest.

To the court, the conduct of State Farm's counsel in this regard seems entirely innocent, while that of counsel for Altus Bank seems quite doubtful. The issue between the attorneys is squarely joined. Was it the duty of State Farm's attorneys to warn Altus Bank that if it was the successful bidder at the foreclosure sale, the amount paid would serve to extinguish the mortgage debt, and thereby the amount of its insurance claim in the same extent, or was it the duty of Altus Bank's lawyers to ascertain that the mortgage interest was insured, and to advise Altus Bank not to pay more than market value in order to become the successful bidder at the mortgage foreclosure sale?

Mortgage insurance is an extremely common form of insurance. Altus Bank's law-

yers were aware at the time of the sale that Altus Bank's bid would be well above market value. Before permitting this bid to be entered, Altus Bank's lawyers should have inquired whether there was insurance upon the mortgage interest in the property, and should have advised Altus Bank of the potential consequences. In the court's view, neither State Farm nor its attorneys had reason to believe that Altus Bank would do anything other than bid whatever it believed to be the property's fair market value or let it go to a higher bidder. Since both of these options would fix the amount to be paid by State Farm on the insurance claim, State Farm's attorneys had no reason to foresee any conflict between the interests of State Farm and Altus Bank with regard to the foreclosure sale. They had no reason, therefore, to change their course of dealing with Altus Bank over its insurance claim, so as to pass it through the lawyers handling the foreclosure. All State Farm needed to know was the foreclosure sale price, so that they could issue a check for the difference.

Although there was communication between Altus Bank and State Farm, the record does not indicate that the defendants at any time assumed the duty of counseling Altus Bank regarding its actions at the foreclosure sale. Altus Bank was represented in the foreclosure by Shapiro & Miles, a California law firm specializing in mortgage foreclosures. Altus Bank failed to inform its legal representatives that there was an outstanding insurance claim with State Farm. Nothing in the record indicates that State Farm knew that Shapiro & Miles was unaware of the insurance claim. The Court finds that any duty to inform Shapiro & Miles that there was an outstanding insurance claim rests with Altus Bank, and any duty to inform Altus Bank of the consequences of a full credit bid in California rests with Shapiro & Miles.

The Court finds that the defendant fulfilled its ethical and legal obligations under the policy and under the laws of California. The defendant is not estopped from asserting the full credit bid rule and cannot be held liable for the plaintiff's full credit bid or the detrimental consequences thereof. The Court finds that there are no material facts in dispute and the defendant is entitled to summary judgment on all causes of action as a matter of law.

IT IS SO ORDERED.