[No. B212347. Second Dist., Div. Eight. Nov. 24, 2009.]

WASHINGTON MUTUAL BANK, Plaintiff v.
SCOTT JACOBY, Defendant and Appellant;
STATE FARM GENERAL INSURANCE COMPANY, Defendant and
Respondent.

COUNSEL

Ezer & Williamson and Mitchel J. Ezer for Defendant and Appellant.

Robie & Matthai, James R. Robie, Michael J. O'Neill and Natalie A. Kouyoumdjian for Defendant and Respondent.

OPINION

**BIGELOW, J.**—Scott Jacoby appeals from an entry of summary judgment against him. In an interpleader action initiated by Washington Mutual Bank (Washington Mutual), defendants Jacoby and State Farm General Insurance Company (State Farm) both claim an entitlement to excess funds Washington Mutual received in satisfaction of a promissory note secured by a deed of trust it held. Both defendants filed motions for summary judgment. The trial court denied Jacoby's motion and granted summary judgment to State Farm. We affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts are undisputed. Rubin Charles Pittman owned a home in Harbor City (the property). The property was encumbered by a first deed of trust in favor of Home Savings of America F.A., which was the predecessor in interest of Washington Mutual. Pittman insured the property against loss by fire with State Farm. The insurance policy included a lender's loss payable endorsement.[1]

---

[1] The endorsement provided, in relevant part: "Loss or damage, if any, under this policy, shall be paid to the Payee named on the first page of this policy, its successors and assigns, hereinafter referred to as 'the Lender', in whatever form or capacity its interests may appear . . . . [¶] . . . The insurance under this policy, or any rider or endorsement attached thereto, as to the interest only of the Lender . . . shall not be invalidated nor suspended: (a) by any error, omission, or change respecting the ownership, description, possession, or location of the subject of the insurance or the interest therein, or the title thereto; (b) by the commencement of foreclosure proceedings or the giving of notice of sale of any of the property covered by this policy by virtue or any mortgage or trust deed; (c) by any breach of warranty, act, omission, neglect, or non-compliance with any of the provisions of this policy . . . by the named insured, the borrower, mortgagor, trustor, vendee, owner . . . or by the happening of any event permitted by them or either of them, or their agents, or which they failed to prevent, whether occurring before or after the attachment of this endorsement, or whether before or after a loss, which under the provisions of this policy of insurance or of any rider or endorsement attached thereto would invalidate or suspend the insurance as to the named insured, excluding herefrom, however, any acts or omissions of the Lender while exercising active control and management of the property."

In October 1995, a $98,784.42 judgment was entered against Pittman in an unrelated action. In February 2005, the Los Angeles County Sheriff recorded a $207,014.49 "Notice of Levy (Enforcement of Judgment) Writ of Execution" against the property.

In June 2005, a fire damaged the property. Pittman submitted a claim to State Farm under his homeowner's insurance policy. State Farm suspected Pittman was involved in setting the fire, and ultimately it denied Pittman's claim because he failed to provide information as required by the policy. Pittman later died. Neither Pittman nor his successors in interest challenged State Farm's denial of coverage. However, the lender's loss payable endorsement in favor of Washington Mutual remained in effect.

In March 2006, Jacoby bought the property at a sheriff's sale for $480,100. On the date of the purchase, $113,854.61 remained owing on the note and trust deed Washington Mutual held against the property. In April 2006, the sheriff sent a warrant to Washington Mutual for $113,854.61 out of the execution sale proceeds.[2] However, Washington Mutual returned the warrant because of insufficient account identification.

On June 8, 2006, the sheriff sent Washington Mutual a second warrant for $113,854.61. On June 9, 2006, Washington Mutual informed State Farm that the amount required to pay off the note was $118,169.98. On June 13, 2006, State Farm sent Washington Mutual a check for $118,169.98 in accordance with the lender's loss payable endorsement.

Thus, by late June 2006, Washington Mutual had received proceeds from the sheriff's sale and payment under the State Farm insurance policy, which, when combined, exceeded the amount owing on the note. Washington Mutual applied all of the execution sale monies it had received to the loan, and further applied $4,942.27 from the State Farm funds to complete the loan payoff. Washington Mutual then sought authorization from the "pertinent parties" to return the balance of the insurance funds to State Farm. However, according to Washington Mutual's complaint, "[t]he only party that disclaimed an interest in the proceeds was the Los Angeles County Sheriff's Office."

---

[2] The sale proceeds were disbursed as follows: $228,605.55 to the judgment creditor; $125,000 to Pittman as a homestead exemption; $113,854.61 to Washington Mutual; $10,855.16 in excess proceeds to Pittman; and $3,717.80 in sheriff's costs.

In September 2007, Washington Mutual filed a complaint in interpleader to resolve the dispute over the funds, which totaled $113,227.51. Washington Mutual named State Farm, Pittman, and Jacoby as defendants. Neither Pittman nor his successors appeared, and, in December 2007, Washington Mutual took Pittman's default.

Jacoby and State Farm subsequently filed cross-motions for summary judgment, each claiming an entitlement to the excess funds. Both sides stipulated to the facts set forth above. The trial court granted State Farm's motion and denied Jacoby's. The court concluded: "(a) Jacoby has and had no interest in the policy or the policy proceeds, as assignee, successor or on the strength of equity considerations. (b) Pittman's loss claim was denied, and neither Pittman nor his estate, challenged the denial. (c) State [Farm] was entitled to return of its loss payments, in the amount of the balance on deposit with the Clerk of the Court ($113,227.51). [¶] Jacoby argues that equity compels the disbursement of the interpleaded fund to him, because those monies will defray the costs he has incurred in repairing the fire and water damage to the interior. He avers that he was not permitted to inspect the interior, and, presumably, that had he seen the interior he would not have paid $480,100.00 for the dwelling. The princip[le] of caveat emptor is apt, where, as here, he should have assumed the possibility of interior damage. It is also apt because Jacoby never says what the market value of the property was at the time of purchase, even with the interior damage, or whether real property appreciation since then has made up for his restoration costs." This appeal followed.

## DISCUSSION

When reviewing a trial court summary judgment ruling, we "independently determine the construction and effect of the facts presented to the trial court as a matter of law." (*Kolodge v. Boyd* (2001) 88 Cal.App.4th 349, 356 [105 Cal.Rptr.2d 749].)

*Jacoby Is Not Entitled to the Excess Insurance Funds*

Jacoby concedes his argument for why he is entitled to receive the excess insurance funds is "weak," yet he argues that State Farm has no claim at all, thus "weak defeats none." We disagree with this analysis. Jacoby has not advanced a valid legal argument that would entitle him to receive the surplus funds.

■ Jacoby contends he is Pittman's "successor in interest," as the purchaser of the property at the sheriff's sale, therefore he is entitled to the excess funds. This argument is unavailing. Although Jacoby may have become Pittman's successor in interest with respect to the property, he did not automatically become Pittman's successor in interest on Pittman's insurance policy.[3] *Long v. Keller* (1980) 104 Cal.App.3d 312 [163 Cal.Rptr. 532] (*Long*), is instructive. In *Long*, the appellate court considered what interest a purchaser had in insurance proceeds paid to the seller-owners after the subject property was damaged by a fire before the sale was complete. The buyer sought specific performance of the sales contract, along with a credit of the insurance proceeds to cover the unpaid balance of the purchase price due on the contract of sale. (*Id.* at p. 318.) The court concluded the buyer had no interest in the insurance proceeds and was not entitled to have the insurance monies credited to the balance due for the property. The court explained: "[A]n insurance policy does not 'run with the land.' Insurance Code section 305 states: 'The mere transfer of subject matter insured does not transfer the insurance, but suspends it until the same person becomes the owner of both the insurance and the subject matter insured.' (See also *Alexander v. Security-First Nat. Bank* (1936) 7 Cal.2d 718, 723 [62 P.2d 735].) [¶] ■ A fire insurance policy does not insure the property covered thereby, but is a personal contract indemnifying the insured against the loss resulting from the destruction of or damage to his interest in that property. In the absence of a special contract, the proceeds of a fire insurance policy are not a substitute for the property, the loss of which is the subject of indemnity. The sum paid is in no proper or just sense the proceeds of the property. [Citation.] [¶] . . . [¶] It is basic that an insurance policy is a personal contract between the insured and the company. . . . [Citation.] There is no privity of contract between [the] buyer and the insurance company in the case at hand." (*Long, supra,* at pp. 320–321.)

The case at bar differs from *Long* in that the insurance funds in question were paid to Pittman's lender, rather than to Pittman, pursuant to the lender's loss payable endorsement. Yet, despite this difference, Jacoby is in much the same position as the buyer in *Long*. The insurance policy was a personal

---

[3] Jacoby contends the surplus funds should not be characterized as "insurance proceeds," and instead should be considered "the balance left over when two sources paid off the same third party's debt." However, given the facts of this case we find the characterization as insurance proceeds a reasonable one. According to Washington Mutual's complaint—which has not been disputed on this point—it did not combine the sale proceeds and the insurance proceeds into a single repayment source. Instead, it applied the execution sale monies first, then extinguished the remaining debt with the insurance proceeds, leaving additional monies that had come from State Farm. Regardless of whether this application of funds was proper or equitable, those are the facts before us.

contract between Pittman and State Farm, and some courts have described a loss payable clause as creating a separate insurance contract between the insurer and the loss payee. (*Mackey v. Bristol West Ins. Service of Cal., Inc.* (2003) 105 Cal.App.4th 1247, 1267 [130 Cal.Rptr.2d 536].) There is no privity of contract between Jacoby and State Farm. Jacoby's status as current owner of the property did not insert him into the insurance contract that was between Pittman and State Farm. (*Russell v. Williams* (1962) 58 Cal.2d 487, 490–491 [24 Cal.Rptr. 859, 374 P.2d 827]; *Alexander v. Security-First Nat. Bank, supra*, 7 Cal.2d at pp. 722–723.)

The legal authorities Jacoby relies upon to support his argument do not persuade us otherwise. *Hansen v. G & G Trucking Co.* (1965) 236 Cal.App.2d 481 [46 Cal.Rptr. 186], concerned a quiet title action in which there was a dispute about whether the purchaser of a property at an execution sale was a bona fide purchaser. In that context, the court stated the general principle that a buyer at a sheriff's sale has the same rights in the purchased property as the buyer would have following a voluntary transfer for value by the owner. (*Hansen, supra*, at pp. 494–495.) *Hansen* does not consider or concern the rights of a purchaser to proceeds from the seller's insurance policy, or the rights of a purchaser to proceeds paid pursuant to a loss payable clause in the seller's insurance policy.

*Bateman v. Kellogg* (1922) 59 Cal.App. 464 [211 P. 46], similarly fails to support Jacoby's argument. *Bateman*, also a quiet title action, stands for the proposition that a purchaser at a foreclosure sale of a junior trust deed becomes the successor in interest to the judgment debtor, and may therefore redeem the property from foreclosure sale under a senior lien. (*Bateman, supra*, at pp. 473–474.) *Bateman* does not consider the rights of the various parties to insurance proceeds or proceeds from a foreclosure sale generally.

Jacoby does not identify any legal authorities to support the argument that, as the purchaser of an already damaged property at an execution sale, he was entitled to any insurance proceeds that were owing due to a lender's loss payable provision in the judgment debtor's insurance policy.[4] Moreover, as

---

[4] State Farm asserts that even if Jacoby were Pittman's successor in interest with respect to the fire insurance policy, he still may not have been entitled to the insurance funds. State Farm denied Pittman's insurance claim because of an alleged failure to comply with the policy requirements to provide information. Jacoby stipulated that neither Pittman nor his estate challenged the denial. State Farm conceded it was required to pay Washington Mutual pursuant to the lender's loss payable endorsement, but it took the position that it was not liable to Pittman under the policy. Thus, on these facts, State Farm contends even Pittman would not necessarily have been entitled to the excess insurance proceeds. Because Jacoby is not Pittman's successor in interest on the insurance policy, we need not decide this issue.

noted, authorities such as *Long* indicate that the opposite is true. Further, Jacoby cites to no legal authorities to support the argument that, as the purchaser of a property at an execution sale, he is entitled to surplus funds arising out of the double payment of a debt secured by the property sold, nor are we aware of any such authorities.

Jacoby further contends State Farm does not have a colorable claim to the surplus funds. We do not see it that way. The parties agree that State Farm was required to pay Washington Mutual under the lender's loss payable endorsement. The parties further agree that Washington Mutual was not entitled to keep funds it received in excess of the amount owing on the note secured by a trust deed on the property. Yet, Jacoby argues that because State Farm was contractually obligated to pay Washington Mutual as of the date of loss, it cannot recoup any of the excess payment.

■ The relevant legal authorities do not support Jacoby's argument. State Farm's obligation under the lender's loss payable endorsement was to pay only the extent of Washington Mutual's interest: the amount outstanding on the note. (*Reynolds v. London etc. Ins. Co.* (1900) 128 Cal. 16, 19–20 [60 P. 467].) "A mortgagee's insurable interest under an insurance policy is limited to the amount of the debt." (*Altus Bank v. State Farm Fire and Cas. Co.* (C.D.Cal. 1991) 758 F.Supp. 567, 571 (*Altus*).) Once the debt was discharged, Washington Mutual had no further claim on any insurance proceeds. (*Ibid.*; *Armsey v. Channel Associates, Inc.* (1986) 184 Cal.App.3d 833, 837 [229 Cal.Rptr. 509] (*Armsey*); *Universal Mortg. Co., Inc. v. Prudential Ins. Co.* (9th Cir. 1986) 799 F.2d 458, 461.)

■ This principle has frequently been applied in connection with foreclosure sales and a lender's "full credit bid." When a trustee or mortgagee forecloses on an encumbered property and makes a successful full credit bid—a bid that is equal to the unpaid principal and interest of the mortgage debt, along with all costs and foreclosure expenses—the debt is extinguished and the trustee/mortgagee is not entitled to insurance proceeds payable for prepurchase damage to the property. (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1238–1239 [44 Cal.Rptr.2d 352, 900 P.2d 601].) "Where an indebtedness secured by a deed of trust covering real property has been satisfied by the trustee's sale of the property on foreclosure for the full amount of the underlying obligation owing to the beneficiary, the lien on the real property is extinguished. [Citations.] In such event, the creditor cannot subsequently recover insurance proceeds payable for damage to the property [citations] . . . ." (*Cornelison v. Kornbluth* (1975) 15 Cal.3d 590, 606 [125

Cal.Rptr. 557, 542 P.2d 981]; see *Caruso v. Great Western Savings* (1991) 229 Cal.App.3d 667, 673–674 [280 Cal.Rptr. 322]; *Duarte v. Lake Gregory Land and Water Co.* (1974) 39 Cal.App.3d 101, 105 [113 Cal.Rptr. 893].)

This case does not involve a foreclosure sale or a full credit bid, but the same general principles apply. Pittman's original debt was almost completely extinguished by proceeds from the execution sale, and State Farm's obligation was only to the extent of Washington Mutual's insured interest. After Washington Mutual applied the sheriff's sale proceeds, only $4,942.27 remained. This was the extent of State Farm's liability to Washington Mutual. (*Armsey, supra*, 184 Cal.App.3d at p. 837; *Altus, supra*, 758 F.Supp. at p. 571.) Any additional amount paid was, in essence, an overpayment.

Jacoby further contends State Farm is attempting to profit from its own delay in making the payment. That the situation may have been different if State Farm had issued payment to Washington Mutual earlier is irrelevant. Indeed, Jacoby offered no facts to establish that he had standing to challenge any allegedly improper delay on State Farm's part, or that any delay was in fact improper.

■ Jacoby also asserts that not awarding him the excess insurance funds is not equitable because he was unable to fully inspect the property before his purchase, and was therefore unaware of the fire damage. He then had to expend additional funds to remedy the damage. However, caveat emptor is the general rule at a judicial sale. (*Mains v. City Title Insurance Co.* (1949) 34 Cal.2d 580, 583 [212 P.2d 873].) Moreover, even if Jacoby was entitled to some form of relief because of undisclosed property damage, he would need to prove up his injuries. All Jacoby argued below was that he was entitled to the excess insurance funds because he is Pittman's successor in interest. Jacoby has failed to provide any legal support for the contention that he is entitled to the excess insurance proceeds simply because the house he purchased was damaged, and the funds happen to be available due to the peculiar timing in this case and the absence of Pittman.

■ Because the execution sale proceeds extinguished much of Washington Mutual's insurable interest, State Farm owed only $4,942.27 pursuant to the lender's loss payable endorsement. The excess amount it paid was an overpayment, thus it is reasonable that Washington Mutual should return that amount to State Farm. Jacoby has not articulated a valid entitlement to the funds. He has no privity with State Farm, he was not an insured on Pittman's homeowner's insurance policy, and he did not become a successor to the insurance policy by virtue of his purchase of the property at an execution sale.

## DISPOSITION

The trial court judgment is affirmed. Respondent is to recover its costs on appeal.

Rubin, Acting P. J., and Flier, J., concurred.