Filed 9/19/14  Ceraolo v. Citibank CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| ANGIE CERAOLO et al., | H039579 |
| Plaintiffs and Appellants, | (Santa Clara County Super. Ct. No. CV209557) |
| v. | |
| CITIBANK, N.A., et al., | |
| Defendants and Respondents. | |

Plaintiffs Angie and Richard Ceraolo sued Citibank, N.A.; BAC Home Loan Servicing, LP (BAC); Recontrust Company, N.A. (Recontrust); and Cindy Nilmeyer, employee of BAC, for multiple causes of action arising from the failure of BAC to reinstate their mortgage loan.  The superior court granted defendants' motion for summary judgment, finding no triable issue of fact on their claims for violation of Civil Code section 2924c,[1] fraud, promissory estoppel, breach of the covenant of good faith and fair dealing, and unfair competition.  On appeal, plaintiffs contend that the court erred when it misinterpreted the term "reinstatement" and failed to recognize that the parties had negotiated for reinstatement as part of a "repayment plan."  We find no error in the superior court's ruling and therefore must affirm the judgment.

---

[1] All further statutory references are to the Civil Code except as otherwise specified.

*Background*

The essential underlying facts are undisputed. In December 2008 plaintiffs began discussing the prospect of a loan modification with BAC, servicer on their $3 million mortgage loan, and BAC's successor by merger, Bank of America, N.A. According to plaintiffs' first amended complaint, BAC told them that they could not be considered for a loan modification until they had missed two payments on the mortgage. Plaintiffs then skipped two payments in early 2009 and applied for a loan modification. That application was denied, and in October 2009 BAC's agent, Recontrust, recorded a notice of default. Plaintiffs' second modification application in January 2010 was also denied. Plaintiffs' complaint alleged that BAC had never intended to grant them a loan modification; it had "deceived" them, causing their credit score of approximately 700 to be "severely diminished."

On May 6, 2010, a notice of trustee's sale was recorded on the property, scheduling the sale for May 28, 2010. Shortly thereafter plaintiffs received a "Reinstatement Calculation" showing a "Net Total Due" of $373,136.24.

On May 24, 2010, plaintiffs met with Nilmeyer, who plaintiffs alleged represented herself as an agent for them as well as BAC. According to the complaint, Nilmeyer discussed plaintiffs' situation with BAC personnel and returned with an offer to "reinstate" plaintiffs' loan. She told plaintiffs that they "would have to pay $262,000 in arrears to rescind the [Notice of Default] and reinstate their loan. Defendant Nilmeyer also told Plaintiffs that after reinstatement, their payment would increase to $34,000 per month for twelve months . . . and decrease to the original monthly mortgage payment if Plaintiffs made those twelve payments." Defendants, however, described the arrangement differently: Rather than immediate reinstatement followed by 12 $34,000 payments, reinstatement would occur upon completion of those additional payments.

This agreement was not reduced to writing, although Bank of America servicing notes in July 2010 included the designation "Type of Workout: Reinstated." Plaintiffs

2

paid the initial $262,000, and the notice of default was rescinded on July 13, 2010. Between August and December 2010 plaintiffs made five of the $34,000 monthly payments. They had expected that with their $262,000 payment their loan "would be reinstated," but instead they continued to receive "acceleration notices," and prospective buyers of the property submitted only "lowball offers" because of its foreclosure status.

In their complaint plaintiffs described a meeting with Nilmeyer in December 2010 to determine whether their loan had in fact been reinstated. After consulting with a superior, she reported to them that they would have to complete all 12 of the monthly payments before reinstatement could be accomplished. "At this point, Plaintiffs no longer understood why they were paying Defendant BAC since their loan had not been reinstated and they were still receiving notices of an intent to accelerate." Because defendants had "failed to take Plaintiffs' account out of foreclosure status," plaintiffs stopped making the $34,000 payments. Instead, on January 1, 2011, they made a final payment of $20,200, the amount they had been paying before the modification arrangement.

On July 14, 2011, a new notice of default was recorded, followed by a notice of trustee's sale on October 14, 2011. On September 20, 2011, however, plaintiffs initiated this action. After defendants demurred, plaintiffs filed a first amended complaint asserting 11 causes of action: violation of section 2924, et seq.; fraud; breach of contract; breach of fiduciary duty; negligence; intentional infliction of emotional distress; promissory estoppel; breach of the covenant of good faith and fair dealing; unfair competition (Bus. & Prof. Code, § 17200, et seq.); violation of the California Rosenthal Fair Debt Collections Practices Act (§ 1788, et seq.); and slander of title. The superior court sustained defendants' demurrer in part, allowing plaintiffs leave to amend the claims for breach of contract, intentional infliction of emotional distress, and slander of title. Plaintiffs did not amend. The remaining causes of action were for violation of

3

section 2924, et seq.; fraud; promissory estoppel; breach of the covenant of good faith and fair dealing; and unfair competition.

Defendants moved for summary judgment or, alternatively, summary adjudication of these five causes of action. On February 27, 2013, the court granted the motion, finding each cause of action to be without merit on the undisputed facts. From the March 18, 2013 judgment, plaintiffs filed this timely appeal.

*Discussion*

Plaintiffs summarize their position on appeal in two seemingly incongruous statements: "A triable issue of fact exists as to whether Appellants were reinstated when they tendered the $262,000.000. Appellants contend that at the moment they tendered $262,750.41, their loan should have been reinstated." They point to the statement in the bank's servicing records bearing the notation "TYPE OF WORKOUT: REINSTATED," and they maintain that the monthly payments were to be part of a repayment plan "after reinstatement." Yet plaintiffs also complain that "after taking their money, Respondents did not reinstate Appellants as promised, and continued foreclosure on [a]ppellants' [p]roperty." Reversal is not warranted under either scenario.

Both parties recognize the applicable principles governing this court's review. Code of Civil Procedure section 437c permits a court "to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).) The motion will be properly granted if there are no triable issues of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1250.) When the moving party is the defendant, the motion will be granted if one or more of the elements of the cause of action cannot be separately established or the defendant establishes a complete defense to that cause of action. (Code Civ. Proc., § 437c, subds. (o), (p)(2); *Aguilar*, *supra*, 25 Cal.4th at p. 850; *Truong v. Glasser* (2009)

4

181 Cal.App.4th 102, 109.) When reviewing a trial court summary judgment ruling, we " 'independently determine the construction and effect of the facts presented to the trial court as a matter of law.' " (*Washington Mut. Bank v. Jacoby* (2009) 180 Cal.App.4th 639, 643, quoting *Kolodge v. Boyd* (2001) 88 Cal.App.4th 349, 356.)

*1. Plaintiffs' Allegations*

In the first cause of action plaintiffs alleged that they had "cured their arrears when they tendered approximately $262,000 to Defendant BAC, which Defendant BAC accepted." At that point, section 2924c "required" BAC to reinstate the loan and the previous $20,200 monthly payment. BAC, however, violated this statute by failing to reinstate plaintiffs' loan following their $262,000 payment. "Instead, Defendant BAC stated that it would only [*sic*] reinstate the loan and the accompanying regular monthly mortgage payment once Plaintiffs made twelve monthly payments of approximately $34,000." Plaintiffs also alleged violation of the statute through the "inaccurate reporting of Plaintiff's [*sic*] amount of arrears" and the imposition of late fees and costs that were incurred only because BAC "enticed Plaintiff[s] to miss payments [in] an attempt to engineer a default when Plaintiffs were not in default."

In the fraud cause of action plaintiffs accused defendants of multiple misrepresentations in an effort to "maneuver Plaintiffs into a default situation and then foreclose on Plaintiffs' Property, while extracting as much money as possible from Plaintiffs." First, BAC falsely represented that "if Plaintiffs skipped their mortgage payments, Defendant BAC would grant Plaintiffs a loan modification." Instead, BAC denied "multiple loan modifications" and initiated foreclosure proceedings against plaintiffs. BAC also falsely represented that foreclosure would not proceed while Plaintiffs were in review for a loan modification. Instead, defendants recorded a notice of default, which damaged plaintiffs' credit even though the notice was later rescinded. A third misrepresentation occurred when the October 5, 2009 notice of default claimed late fees and costs plaintiffs were not responsible for because they had been instructed to skip

5

payments.  A BAC agent also misrepresented the time in which plaintiffs were allowed to reinstate their loan under section 2924c, subdivision (e), by telling them that they had less time than they actually did.

The wording of the last alleged misrepresentation— which appears to be the central focus of plaintiffs' challenge on appeal-- is significant.  According to the complaint, Nilmeyer told plaintiffs that "to reinstate their loan, Plaintiffs would have to pay $262,000.00 in arrears and that they would have to pay $34,000.00 for the next twelve (12) months, beginning August 1, 2010, before their payments would diminish to the original monthly mortgage payment Plaintiffs were paying prior to skipping payments.  These representations [*sic*] were false and misleading in that to reinstate their loan and resume paying their regular monthly payment of around $20,200, Plaintiffs needed only to cure their arrears pursuant to  . . . Civil Code § 2924c(a)(1).  Plaintiffs cured their arrears by making payments to Defendant BAC in the amount of $262,000.00 As a result, Defendant BAC was required to reinstate Plaintiffs' [l]oan and send Plaintiffs a monthly mortgage statement reflecting the true amount due.  Instead, in addition to failing to reinstate the loan, Defendant BAC siphoned an additional $190,000.00 from [p]laintiffs in the form of five (5) monthly payments of $34,000.00, approximately $14,000.00 per month more than Plaintiffs' original monthly mortgage payment, and Plaintiffs' final payment of $20,200.00."

The promissory estoppel claim was similarly based on Nilmeyer's promise that if plaintiffs paid $262,000, their loan would be reinstated.  The additional monthly payments, plaintiffs alleged, did not pertain to the reinstatement; furthermore, this increase from $20,200 to $34,000 was "not permitted" by section 2924c.  Plaintiffs relied on the reinstatement promise by tendering the $262,000, five payments of $34,000, and the last payment of $20,200.  They were injured "when after accepting almost $500,000.00, Defendant BAC failed to reinstate Plaintiffs' [l]oan."  Defendants should have expected plaintiffs to rely on this promise, and plaintiffs did rely on it when they

6

tendered $262,000.  Having accepted without objection plaintiffs' "full payment to reinstate the [l]oan," defendants should be bound by their promise and BAC "should be estopped from denying that Plaintiffs ever failed to reinstate their [l]oan."

Plaintiffs' claim for breach of the covenant of good faith and fair dealing was based on the same facts, the promise to reinstate the loan upon the payment of $262,000, which plaintiffs believed "cured their arrears."  As a result of defendants' "conduct, omissions, and representations, Plaintiffs have suffered and continue to suffer harm including . . . payment of excessive fees, a negative credit rating, and severe emotional distress."

Finally, the cause of action for unfair competition asserted a violation of Business and Professions Code section 17200 et seq.  This claim was expressly "tethered to" the alleged acts of fraud and the abandoned claims of negligence and breach of fiduciary duty.

The gravamen of all of these allegations is that defendants induced plaintiffs to make large payments toward the arrearage and then refused to reinstate their loan as promised.  Although most of plaintiffs' opening brief is devoted to the contention that the loan was in fact reinstated, the focus of the summary judgment proceedings below was consistent with the allegations of the complaint.  Because summary judgment review is defined by the issues raised in the pleadings, we confine our analysis to those allegations.

2. *Defendants' Motion*

The basis of defendants' motion was primarily a legal one.  They pointed out that section 2924c requires repayment of all arrears in order to reinstate a loan.  This was a correct summary of the law.  The statute provides, in pertinent part, that the trustor or mortgagor who is in default may, up to five business days before the foreclosure sale is scheduled to take place, "pay to the beneficiary or the mortgagee *the entire amount due*, at the time payment is tendered, with respect to (A) all amounts of principal, interest, taxes, assessments, insurance premiums, or advances actually known by the beneficiary

7

to be, and that are, in default and shown in the notice of default, under the terms of the deed of trust or mortgage and the obligation secured thereby, (B) all amounts in default on recurring obligations not shown in the notice of default, and (C) all reasonable costs and expenses, subject to subdivision (c), which are actually incurred in enforcing the terms of the obligation, deed of trust, or mortgage, and trustee's or attorney's fees, subject to subdivision (d), other than the portion of principal as would not then be due had no default occurred, *and thereby cure the default* theretofore existing, and thereupon all proceedings theretofore had or instituted shall be dismissed or discontinued and *the obligation and deed of trust or mortgage shall be reinstated and shall be and remain in full force and effect, the same as if the acceleration had not occurred . . .*" (Italics added.)

It is undisputed that plaintiffs did not pay BAC the "entire amount due." Thus, whatever they were told by Nilmeyer, their $262,000 partial payment could not have generated a reinstatement under section 2924c. Plaintiffs offered no evidence that, as they now contend, the parties negotiated for $262,000 to be the *entire* amount due. While the servicing notes confirm this payment amount with a purported designation of "full reinstatement," they do not in themselves evidence either statutory reinstatement or an agreement by BAC to forgo receipt of the $34,000 monthly payments that were a condition of the parties' arrangement.

To establish fraud at trial, plaintiffs would have been required to prove "(1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." (*Robinson Helicopter Co., Inc. v. Dana Corp.* (2004) 34 Cal.4th 979, 990.)

Defendants responded to the fraud cause of action by citing plaintiffs' deposition testimony to show that no misstatements were made to plaintiffs. Plaintiffs acknowledged in their testimony that they "were not explicitly told to miss payments"; it

8

was only "implied" that they would not be "considered" for a loan modification until they were "behind on [their] mortgage payments."

As to the central issue of reinstatement, Richard Ceraolo testified that he understood from Nilmeyer that the increased monthly payments would be applied toward arrears. He agreed that until those 12 payments were made, "there would still be an arrearage on the loan." But he believed that with the $262,000 payment, reinstatement would occur—that is, the loan "would be put back into good standing." Angie Ceraolo also understood that the condition of full reinstatement was $262,000. After learning that this was not enough, "Plaintiffs ceased payments because Plaintiffs thought and felt as if Defendant BAC was acting in bad faith by accepting Plaintiffs' payments and not reinstating Plaintiffs' [l]oan. Moreover, Plaintiffs did not understand why they were paying Defendant BAC for their loan which Defendant BAC refused to reinstate. Plaintiffs are informed and believe, and thereon allege, that Defendant BAC never intended to reinstate Plaintiffs' [l]oan." In his deposition Richard Ceraolo explained that he stopped making the additional payments "[b]ecause I was deceived, lied, told something completely false to get our last bit of money we had saved up, and I was – I was deceived and cheated. Angry is a good word."

Plaintiffs' deposition testimony revealed no fraudulent misrepresentation by Nilmeyer. It did evidence plaintiffs' misunderstanding of what "reinstatement" meant. Nilmeyer herself may have been confused about the concept, or she may have been remiss in not explaining this term under section 2924c; but plaintiffs nonetheless did understand from that conversation that they were expected not only to pay $262,000 in a lump sum but also to make 12 monthly payments of $34,000 to cure their default. Even if Nilmeyer can be said to have misrepresented the outcome of the $262,000 payment, defendants showed that plaintiffs would be unable to prove the elements of intent to defraud and justifiable reliance. In order to show justifiable reliance, the plaintiff must demonstrate that " 'circumstances were such to make it *reasonable* for [the] plaintiff to

9

accept [the] defendant's statements without an independent inquiry or investigation.' [Citation.]" (*OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp.* (2007) 157 Cal.App.4th 835, 864.) Had plaintiffs independently ascertained the meaning of "reinstatement" under section 2924c, they would have learned that the loan would not be reinstated until the default was cured by payment of the arrearages. At that point they could have inquired further of Nilmeyer and obtained a written agreement defining the terms and outlining the conditions of the May 2010 payment adjustment.

On appeal, plaintiffs do not attempt to revisit this cause of action by arguing that a triable issue of fact existed on the elements of fraudulent misrepresentation. Instead, they rely on the legal premise that the parties had agreed that reinstatement would occur with the lump sum payment. But even if we agreed that plaintiffs' interpretation of the term "reinstatement" governed their relationship, they have still failed to show how the elements of fraud could have been proved at trial. Plaintiffs readily acknowledge that a condition of their arrangement with BAC was that in addition to the $262,000, "they would pay an elevated monthly mortgage payment to repay all monies [that] were not included in the lump sum." Under section 2924c, they were not relieved of their default status until those payments were completed. Accordingly, defendants were under no obligation to report the loan as "in good standing." The inability to attract buyers for their home was a result of their continued default status, not defendants' failure to declare the loan reinstated.[2]

"The elements of promissory estoppel are (1) a promise, (2) the promisor should reasonably expect the promise to induce action or forbearance on the part of the promisee or a third person, (3) the promise induces action or forbearance by the promisee or a third person (which we refer to as detrimental reliance), and (4) injustice can be avoided only

---

[2] Plaintiffs' brief assertion on appeal that they refrained from filing for bankruptcy in reliance on Nilmeyer's promise was not made in their complaint.

by enforcement of the promise." (*West v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 780, 803;  In addition, the promise must be " 'clear and unambiguous in its terms,' " and " 'the party asserting the estoppel must be injured by his reliance.' [Citation]" (*US Ecology, Inc. v. Stateo of California* (2005) 129 Cal.App.4th 887, 901; 904; *Aceves v. U.S. Bank, N.A.* (2011) 192 Cal.App.4th 218, 227.)  On this last point, "it is logical and proper to require that any claimed damages be caused by a defendant's breach of the [promise].  Because promissory estoppel is viewed as an 'informal contract,' causation must be required as an element that a plaintiff must prove, just as in ordinary contract actions." (*US Ecology, Inc. v. State*, *supra*, 129 Cal.App.4th at p. 904.)  In their motion defendants argued that plaintiffs had failed to allege any facts meeting the elements of this cause of action.

Plaintiffs did not address the elements of promissory estoppel in their opposition, nor do they on appeal.  They thus appear to concede that the superior court was correct in stating that the absence of a "clear and ambiguous promise" defeats this cause of action and that no misrepresentation occurred that could result in estoppel.  In addition, as noted in the context of their misrepresentation allegations, a " 'misguided belief or guileless action in relying on a statement on which no reasonable person would rely is not justifiable reliance . . . . "If the conduct of the plaintiff in the light of his own intelligence and information was manifestly unreasonable,  . . . he will be denied a recovery." ' [Citation.]" (*Aceves v. U.S. Bank, N.A.*, *supra*, 192 Cal.App.4th 218, 227.)  Having been offered no basis for reaching a different result from that compelled in the fraud cause of action, we must uphold the lower court's ruling on this claim.

The same conclusion is compelled with respect to the remaining causes of action for breach of the covenant of good faith and fair dealing and unfair competition.  As to the former, defendants showed by undisputed evidence that the premise of this claim, that plaintiffs "cured any and all defaults," was not true.  Plaintiffs did not raise a triable issue on this point.  Their cause of action for unfair competition was expressly "tethered to

11

Defendants' acts of fraud, breaches of their respective fiduciary duties, and negligence," and therefore falls with the adjudication of those claims.[3]

*Disposition*

The judgment is affirmed.

---

[3] Plaintiffs' additional suggestion that they "forewent a bankruptcy filing" when they reinstated is completely without merit. First, they did not allege this fact as damages under any of the surviving causes of action in the first amended complaint. Second, no facts create a triable issue on this point; at best plaintiffs cite only the declaration of Richard Ceraolo, who stated that while awaiting a loan modification he "had in mind" two options: to declare bankruptcy or to "reinstate with the bank directly by paying the bank's demands."

_____

ELIA, J.

WE CONCUR:


_____

RUSHING, P. J.



_____

PREMO, J.